UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:01CV1086 (JCH) |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 27 LINCOLN AVENUE, | : | |
| NORWALK, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON, | : | |
| | : | |
| Defendant. | : | November 12, 2003 |
| | : | |
| [CLAIMANT: ALQUEEN BURDEN] | : | |

UNITED STATES OF AMERICA'S OPPOSITION
TO CLAIMANT'S SECOND MOTION FOR PROTECTIVE ORDER

The United States of America (the "United States") hereby opposes Claimant Alqueen Burden's Second Motion for Protective Order ("Motion"). As grounds for this opposition, United States says the following:

In anticipation of conducting depositions of certain incarcerated witnesses who are expected to testify for the United States at trial, claimant seeks a protective order. With respect to those witnesses, claimant requests that the court "issue an order requiring the production of [those] deponents for deposition, without their having been prepared for the deposition by the government." Motion at 4. Claimant states that "the government should not be permitted to provide the witnesses with any advance notice of the type of proceeding, or what the government seeks to accomplish by the proceeding," noting that these are witnesses who may "testify[] for the government in the expectation of receiving a benefit from the government," Id. In support of this position, claimant

cites only the general provisions of Fed. R. Civ. P. 26(c). The United States respectfully submits that neither Rule 26(c) nor any other legal authority supports claimant's request, and that the Motion should be denied.

## Summary of Argument

Claimant cites no statute, rule, or case authority, and undersigned government counsel is aware of no such legal authority, that would authorize the requested order. The sole authority cited by claimant - Fed. R. Civ. P. 26(c) - does not furnish a basis for the requested order. It is standard, routine practice for counsel and other members of a litigation team to meet with their likely trial witnesses in advance of any testimony being offered by such witnesses. This is recognized by both Fed. R. Civ. P. 26(b)(3) and the abundance of federal cases, starting with Hickman v. Taylor, 329 U.S. 495 (1947), that discuss the protections afforded attorney work-product resulting from ex parte witness interviews and other preparation for litigation. Not to meet with such witnesses prior to their testimony would constitute inadequate legal work on behalf of a party. In this case, the need for witness meetings is especially strong, in that: (1) government representatives have not previously asked these witnesses about many of the subject matters that are specific to the forfeiture issues in the above-captioned case; and (2) these witnesses' familiarity with the legal process is mostly or entirely limited to criminal prosecutions, whereas their understanding of the civil litigation process, and the rules governing civil depositions, is minimal to non-existent. The trial team in this case has done nothing unfair or unethical in the meetings it has already held with incarcerated witnesses. In the three prisoner depositions conducted so far by claimant's counsel, the nature and substance of those meetings were freely inquired of by claimant's counsel without objection from government counsel. Such inquiries, along with any future impeachment consistent with the rules of cross-

examination, are the remedies available to claimant for the circumstance of which she complains. By contrast, barring one - and only one - party's representatives from interviewing their own witnesses is a radical and unnecessary intrusion upon the duty of the government's attorneys, agents, and assistants to competently and thoroughly represent their client in this litigation.

<u>Argument</u>

Claimant cites no statute, rule, or case authority that would support the protective order she seeks, and undersigned government counsel is aware of no such authority.  The sole, purported authority cited by claimant, Fed. R. Civ. P. 26(c), speaks only in the most general language, which does not appear to embrace the circumstance complained of here.  In pertinent part, Rule 26(c) states that "on matters relating to a deposition, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Claimant declines to explain why this rule would support the protective order requested here. Of the four enumerated adverse circumstances that could trigger judicial intervention - "annoyance, embarrassment, oppression, or undue burden or expense" - claimant fails to state which of these is present here, and hence she fails to explain why any such adverse circumstance is present to such a degree as to require judicial intervention.  Most obviously, she cannot conceivably complain of "annoyance", "embarrassment", or "undue burden or expense" if the government remains free to interview its own anticipated witnesses before they are deposed.  By such simple elimination, this leaves "oppression" as the likeliest basis of claimant's reliance on Rule 26(c).  How claimant is unfairly "oppressed" by the government's doing what all litigants do prior to virtually every civil deposition, she fails to specify.  Accordingly, the government respectfully submits that claimant's reliance on Rule 26(c) is thoroughly misplaced.  It follows that claimant has failed to cite legal

authority of any sort that would support her request. Cf. Turnbull v. Topeka State Hosp., 185 F.R.D. 645, 650-653 (D. Kan. 1999) (denying civil defendant's request for protective order to bar plaintiff from interviewing witnesses outside the presence of defense counsel, and rejecting defendant's reliance on Rule 26(c) for such a request, reasoning that "Rule 26(c) . . . relates to discovery and disclosures. It does not authorize protective orders to regulate the conduct of parties and counsel in their collateral investigations independent of discovery and disclosure.").

The radical nature of claimant's request is particularly evident when considered in light of two facts: (1) trial attorneys along with investigative agents and legal assistants virtually always meet with their party's witnesses before any such witnesses are deposed; and (2) such meetings, and the "work product" generated by such meetings, are afforded a high degree of protection, both by Fed. R. Civ. P. 26(b)(3)[1], and by more than fifty years of federal case law dating back to Hickman v. Taylor, 329 U.S. 495 (1947). As the Supreme Court stated in Hickman v. Taylor:

> . . . In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and

---

[1] Rule 26(b)(3) permits discovery of attorney work-product only upon a showing both that "the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Even then, the rule prohibits any disclosure that would reveal "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

> countless other tangible and intangible ways – aptly though roughly termed by the Circuit Court of Appeals . . . as the 'Work product of the lawyer.'

329 U.S. at 510-511 (1947). See also, e.g., Sparton Corp. v. United States, 44 Fed. Cl. 557, 564 (1999) ("[A]n attorney's memory, notes and impressions of oral statements of witnesses interviewed in the course of preparing for litigation are . . . a form of opinion work product which merits special protection."); Bercow v. Kidder, Peabody & Co., 39 F.R.D. 357, 358 (S.D. N.Y. 1965) (denying motion to compel defendant Kidder, Peabody's designated representative to answer deposition questions about whom he had spoken with and what he had done to prepare for deposition, because "the questions here in issue represent an indirect attempt to ascertain the manner in which an adversary is preparing for trial"); Applegate, John S., "Witness Preparation," 68 Tex. L. Rev. 277, 292 (December 1989) ("On work-product and attorney-client grounds, courts regularly refuse to compel disclosure of trial preparation activities with witnesses."). As these authorities demonstrate, a party's pre-deposition interviews of its likely trial witnesses are not only common practice, but also specially protected against disclosure and outside interference.

In at least one published opinion, a federal trial court rejected a request for a protective order somewhat similar to that sought by claimant. Felder v. Wyman, 139 F.R.D. 85 (D. S.C. 1991). Defendant was a physician, who was sued by the decedent plaintiff's estate for medical malpractice. Defendant's counsel sought to interview other physicians who had treated the decedent. Plaintiff sought a protective order, barring any such interviews from occurring "without plaintiff's consent and unless done in the presence of plaintiff's counsel or by deposition under the formal discovery rules." 139 F.R.D. at 86. The court denied the motion, reasoning that:

> . . . Plaintiff's proposed protective order would give plaintiff an unfair advantage in the discovery process by granting inordinate control over a witness's disclosures and by allowing plaintiff to monitor the work of defendants in preparing their case. Rule 26(b)(3), Fed.R.Civ.Proc., specifically protects the work product of attorneys. . . Interviews with potential witnesses have always been considered part of the work product of the attorney, as noted in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 393-94, 91 L.Ed. 451 (1947). Allowing plaintiff's counsel to monitor such interviews directly contradicts the Rule as set forth above.
>
> The preparation and trial of a lawsuit is a rational search for the truth. Plaintiff's proposed order allowing him to monitor defendants' case preparation and control access to witnesses obstructs that search. . . .
>
> . . . The Federal Rules of Civil Procedure do not support plaintiff's desired result.

Felder v. Wyman, 139 F.R.D. at 90-91.

Interviewing one's potential witnesses before they testify, far from conferring any kind of unfair advantage, is standard practice in civil litigation - it is a baseline of assuring that one's party receives adequate legal representation. <u>Not</u> to interview one's potential witnesses would be the source of an unfair advantage - an advantage conferred upon the <u>adverse</u> party, which would remain free to interview its own potential witnesses before they testify. In this forfeiture litigation, the United States's need to meet with these incarcerated witnesses is especially compelling. Previous government interviews of the same witnesses necessarily focused upon the facts material to the then-pending criminal prosecutions of certain defendants, and not upon the facts particular to the asset forfeiture litigation, which turns on different legal issues and involves an adverse party who was not one of the charged defendants. The events pertinent to the forfeiture litigation occurred within a time frame of between about eight years ago and two-and-a-half years ago. Moreover, the witnesses in

question, all of whom are defendants convicted of narcotics trafficking offenses, are personally quite familiar with the criminal process, but have effectively no experience and minimal to no understanding of the civil litigation context, nor of the rules and practices pertaining to civil depositions. Especially under such circumstances, it is affirmatively helpful to the truth-seeking process for the United State's representatives to meet with such witnesses, explain in a neutral manner how depositions work and what the depositions are about, and afford the witnesses the opportunity to begin to refresh their memories of matters that they may well have thought little about for quite some time.

It should go without saying that the trial team in this case has done nothing unfair or unethical in the meetings it has already held with incarcerated witnesses. As suggested above, representatives of the United States have met with some of these witnesses one at a time, explained that the witnesses were to be deposed in the lawsuits, explained very simply what the case was about, explained to each witness what happens in depositions, instructed each witness only to tell the truth in answering any questions, and proceeded to ask the witness questions about various subject matters that may be pertinent to the civil forfeiture litigation. Each of these witnesses is represented by counsel, who not only consented to the interviews, but concurred in the United States's judgment that their clients are entitled to have some understanding of the process and the context before the witness is deposed.

Moreover, before any deposition of these witnesses occurred, claimant's counsel was afforded abundant discovery about these witnesses, including but not limited to, copies of cooperation agreements, if any, between any such witnesses and the United States, and copies of FBI Form 302 memoranda of interviews, if any, conducted by the FBI with any such witness. At the

three depositions so far taken of incarcerated witnesses, claimant's counsel asked – and the United States refrained from making a work-product objection – about what the witness had done to prepare for the deposition, including who the witness had met with beforehand and what had been discussed in any meeting with undersigned counsel and the lead case agent. In sum, claimant has been given all, and perhaps more than all, of the information to which she is entitled in order to effectively cross-examine and impeach these witnesses at trial, on all variety of subjects including the witnesses' meetings with government counsel and case agents. This is the appropriate remedy for whatever concerns animate claimant's request for a protective order. Surely not the appropriate remedy is claimant's radical proposal to deny the United States - and <u>only</u> the United States - its lawful right and obligatory duty to prepare for depositions by witness interviews.

WHEREFORE, the United States respectfully submits that defendant's Motion for Protective Order should be DENIED.

Respectfully submitted

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


HENRY K. KOPEL
ASSISTANT UNITED STATES ATTORNEY
Fed. Bar No. ct24829
157 Church Street, 23d Floor
New Haven, CT  06510
(203) 821-3769

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Opposition to be sent by first class mail, postage prepaid, on this 12th day of November, 2003, to:

> Robert Sullivan, Esq.
> 190 Main Street
> Westport, CT 06880

> HENRY K. KOPEL
> ASSISTANT U.S. ATTORNEY
> 157 CHURCH STREET, 23d FLOOR
> NEW HAVEN, CT 06510
> (203) 821-3769
> FEDERAL BAR # ct24829